TIPTON, ADMR. C. T. A. OF ESTATE OF MOSES SAULSBERRY
*v.* SAULSBERRY.

No. 39534          April 4, 1955          78 So. 2d 893

*R. F. B. Logan,* Hernando; *James Stone & Sons,* Oxford, for appellant.

*Lawrence W. Harrison, Judge Edgar Webster,* Memphis, Tennessee, for appellee.

ARRINGTON, J.

Moses Saulsberry died in Memphis, Tenessee, on January 19, 1953, owning at the time of his death property in Mississippi and in Tenessee. He had resided in Mississippi until 1952, when he established his home in Tennessee. In his will, executed in 1939, he devised 40 acres of land on which his home was situated in DeSoto County, Mississippi, to Josephine Saulsberry, his wife, together with other real property and certain personal property, none of which is involved in this case. All other property not devised and bequeathed in said will was devised and bequeathed one-fifth to Josephine Saulsberry, and four-fifths to other persons. After his death, the will was offered for probate in DeSoto County, Mississippi, by two of the residuary legatees, Johnie Saulsberry and Estella Saulsberry, was admitted to probate, and James P. Tipton, Chancery Clerk, was appointed administrator, c. t. a. of the last will and testament of Moses Saulsberry, deceased.

Thereafter it developed that on August 20, 1952 Moses Saulsberry had sold to Lawyer Chalmers and his wife, Estella W. Chalmers, the 40 acres of land in DeSoto County on which he resided while living in Mississippi, and which had been devised in his will to Josephine Saulsberry, for a consideration of $4,000 — $1,200 in cash and the sum of $2,800 evidenced by six notes payable as follows: Note No. 1 for $134.00, payable on or before December 1, 1952; Notes 2, 3, 4, 5 and 6, each in the sum of $555.00, being due and payable as follows: Note No. 2 being due and payable on or before December 1, 1953, and one of said notes being due and payable on or before the first day of December of each year thereafter. These notes provided for interest at the rate of five percent per annum from December 1, 1952, and

were secured by a deed of trust on the 40 acres of land. The notes were payable to Moses Saulsberry and his wife, Josephine Saulsberry. The whereabouts of the notes were not known and the administrator c. t. a. filed a petition against Lawyer Chalmers and his wife, Estella W. Chalmers, setting out the above facts and alleging that as administrator c. t. a., it was his duty to collect one-half of each of the last five notes and one-half of the interest due thereon. Defendants answered, acknowledging the averments of the petition and submitted themselves to the jurisdiction of the court, and asked for directions as to how to pay the money. Whereupon, the defendants were ordered to pay one-half of the amount of said notes, as each note became due, to the administrator c. t. a. of the estate of Moses Saulsberry, deceased. Josephine Saulsberry was not a party to this proceeding, and no process was served on her, or notice given her of said proceeding, although the administrator was corresponding with her about other matters and knew her address. This decree was entered on September 14, 1953.

On January 14, 1954, Josephine Saulsberry filed her petition in the Chancery Court of DeSoto County, asking that the previous decree ordering one-half of the sum of said notes be paid to the administrator c. t. a. of the estate of Moses Saulsberry, deceased, be set aside, and alleged that prior to the death of Moses Saulsberry, he had given the notes to her, and other matters not necessary to set forth herein, due to the conclusion that we have reached.

Upon hearing the matter, the chancellor vacated the former decree and found that Moses Saulsberry, for good and sufficient reason during his lifetime, gave these notes to Josephine Saulsberry to be her sole and exclusive property, and appellant has appealed.

The elements of a gift inter vivos are set forth in the case of Maier v. Hill, (Miss.) 72 So. 2d 209, and the facts in that case are very similar to the facts in this case, except that persons not related to any of the interested

parties were present and testified to the fact of the gift, and the notes were payable to the donor and donee. In the instant case, Maliza Williams, the daughter of the appellee, was the only witness to testify that she saw the gift made. O. T. Williams, a son-in-law, and Valerie Daniels, a daughter, testified concerning statements made by the donor a month or so after the alleged gift, which supported Maliza's testimony. The chancellor saw these witnesses and had a right to determine whether they were telling the truth.

██ █ Appellant argues that assuming the testimony of the petitioner's witnesses to be true, the evidence is just as consistent that it is a gift of only a half interest in the notes as it is that it is a gift of the entire interest. However, it is a question for the trier of fact "to decide as questions of fact matters relating to the . . . intent with which the delivery was made." 38 C. J. S., Gifts, p. 893. And where the relationship of the parties is such as to make a gift a natural act, the courts look with more favor on it where the weight of evidence is involved than would be necessary to sustain a gift to a stranger. 38 C. J. S., Gifts, pp. 882-883. ██ █ On the other hand, gifts asserted after the death of the alleged donor should be proved by clear and convincing evidence. Stewart v. First National Bank & Trust Company of Vicksburg, 192 Miss. 355, 5 So. 2d 683.

██ █ Nevertheless, accepting the petitioner's testimony as true, there was substantial evidence to support the finding of a gift, which would include the necessary intent of the donor to give the entire interest in the notes, and we cannot say that the chancellor was manifestly wrong in his finding that there was a gift inter vivos of the promissory notes.

Affirmed.

*Roberds, P. J.,* and *Kyle, Ethridge,* and *Gillespie, JJ.,* concur.